WILLIAM WELSH *vs.* FIRST DIVISION OF THE ST. PAUL & PACIFIC RAILROAD COMPANY.

October 10, 1878.

On reargument, March 3, 1879.

**Findings sustained by Evidence.**—The findings of the court as to the identity of the coupons sued on with those introduced in evidence, and upon which a recovery was had, and that they were issued and negotiated in connection with the bonds referred to in the complaint as therein alleged, considered and sustained upon the evidence and admissions in the pleadings.

**Liability of Company to third persons, under agreement for Organization.**—A corporation created and organized under and pursuant to an agreement authorized and sanctioned by competent legislative authority is bound by its provisions and all liabilities it imposes in favor of third parties. A provision in such agreement that the company shall assume all liabil-

ties of every name and nature, relating to certain lines of railroad transferred to it by such agreement, includes debts contracted in the construction of such lines of road, and secured thereon by a trust mortgage; and the company is liable for their payment to the holders thereof.

**Railway Mortgage Bonds—Suit on Coupons pending foreclosure suit by Trustees.**—The pendency of an action for the foreclosure of a mortgage given to trustees by a railroad company, upon its road and franchises, as security for an issue of negotiable coupon bonds, and containing the usual powers found in such instruments authorizing them, upon default in the payment of any instalment of interest coupons, to declare the bonds due, and thereupon to proceed to realize upon the security by foreclosure or otherwise, as prescribed in the mortgage, and to apply the proceeds, but with no further or other power or interest in respect to the obligations or their collection, is no bar to an action in favor of any holder or owner of any of such overdue coupons to recover the amount due thereon by judgment and execution.

**Same—Nature and Scope of Foreclosure Suit.**—An action for foreclosure by the trustees in such a case is a proceeding in the nature of a remedy *in rem*, and not *in personam*. The trustees have no right to a personal judgment, to be enforced by execution, for any deficiency in the indebtedness left after exhausting the securities and applying their proceeds. The effect of the judgment rendered in such an action is to determine the amount of the mortgage debt, so as to know how much of the security will be required to satisfy the same. The provisions of Gen. St. *c.* 81, § 30, in reference to issuing an execution for the balance, if any, of the debt, are inapplicable to a case of this kind.

**Same—Interest on Coupons.**—Interest is recoverable upon overdue coupons, payable to bearer at a particular time and place, from and after their maturity.

ON REARGUMENT.

**Action on Coupons for Interest accruing after Principal of Bonds has been declared Due.**—The defendant issued bonds for the payment, to bearer, of money with interest, with interest coupons, in the usual form, attached. Before the time fixed for the payment of the principal in the bonds, they became due at once, under a condition contained in the mortgage securing the bonds. In an action upon interest coupons for a time subsequent to the bonds thus becoming due, *held*, that the holder of such coupons is entitled to recover the amount of them, the damages allowed by law for default in payment of the principal being at the same rate as the stipulated interest.

The St. Paul & Pacific Railroad Company, being authorized by its charter to construct and operate a line of railroad from

St. Paul via St. Anthony to Breckenridge, with a branch from St. Anthony via St. Cloud and Crow Wing to St. Vincent, for the purpose of raising money to construct that part of its rail-road extending from St. Paul via St. Anthony and up the valley of the Mississippi river to Watab, issued and negotiated its bonds to a large amount, bearing date June 2, 1862, pay-able June 1, 1892, with interest at seven per cent. per annum, payable semi-annually, according to the tenor of interest war-rants or coupons thereto annexed. At the same time, to secure the payment of the bonds and interest, the company executed and delivered to trustees a mortgage upon its line of railroad from St. Paul to Watab, and the lands, franchises and appur-tenances thereto appertaining. The bonds and the mortgage contained a provision empowering the trustees to declare the principal of the bonds due and payable, after six months' default in the payment of any instalment of interest.

Prior to the date of the mortgage the company had con-tracted with Litchfield & Co. for the building of that part of its road between St. Paul and Watab. The contractors had built a part of the road when the company became unable to make the payments due the contractors, and thereupon pro-cured an act of the legislature, authorizing it to issue pre-ferred and special stock, and to make agreements with the holders of such stock for the organization of the holders of such stock, and the exercise by them of all the powers of the company in respect to that portion of its railroad to which such special stock should pertain. After the passage of this act, the company issued to E. B. Litchfield, one of the firm of Litchfield & Co., special stock pertaining to that part of the road between St. Paul and Watab, and that part between St. Anthony and Breckenridge, and on February 6, 1864, an agreement was made between the company and E. B. Litch-field, by which the company sold and conveyed to him, as holder of such special stock, all its property and franchises in the lines of road to which the stock pertained, and he agreed to form a new organization by the name of the First Divis

ion of the St. Paul & Pacific Railroad Company, to construct the road and exercise the franchises thus transferred. The agreement contains the following covenant on the part of Litchfield: "And the party of the second part, for the separate organization herein contemplated, agrees to assume all liabilities of the party of the first part, so far as relate to the lines of road hereinbefore mentioned, of every name and nature, and to save the said party of the first part harmless therefrom." In pursuance of this agreement, Litchfield and others to whom he assigned a portion of his special stock organized the First Division of the St. Paul & Pacific Railroad Company, the defendant in this action. The proceedings by which this company was thus created were legalized by subsequent legislation; and in *First Div. St. Paul & Pac. R. Co.* v. *Parcher*, 14 Minn. 297, it was held that the new company was a legal corporation separate and distinct from the old. The new company, defendant herein, for some years paid the interest coupons on the bonds of the issue of 1862, but afterwards made default, and the plaintiff's first cause of action is upon certain coupons of bonds of that issue, for the instalment of interest thereon falling due June 1, 1877. The coupons are in the following form, the blanks being filled according to the number and denomination of the bond: "The St. Paul & Pacific Railroad Company will pay to the bearer ——— dollars at their office or agency in the city of New York, on the first day of June, 1877, interest due on that day on their real estate bond No. —.          HENRY ACKER, Secretary.

"*June 2, 1862.*"

On March 1, 1864, the defendant the First Division of the St. Paul & Pacific Railroad Company, for the purpose of procuring the means to construct its line from St. Anthony westward, known as its Main Line, issued its bonds to the amount of $3,000,000, payable May 1, 1894, with interest at seven per cent. per annum, payable semi-annually on May 1st and November 1st in each year, according to the tenor of interest coupons thereto annexed. To secure the payment of

the bonds and interest, the defendant, on March 1, 1864, exe-
·cuted and delivered to trustees a mortgage on the first 150 miles
of such main line. The bonds and the mortgage alike provided
that in case of six months' default in payment of interest,
the principal of the bonds should, at the election of the
trustees, become immediately due and payable. The defend-
.ant failed to pay the instalment of interest falling due May
1, 1873, and never afterwards made any further payments
but continued in default. On May 4, 1874, the trustees
brought suit in the late court of common pleas to foreclose
the mortgage, and in their complaint set forth the occurrence
.and continuance of the default, and declared the principal of
the bonds to be due and payable. This action was transferred·
to the district court for Ramsey county and was still pending,
and no judgment had been rendered therein, when this action
was brought. The plaintiff's second cause of action is upon
certain coupons of the last-mentioned mortgage for the instal-
ment of interest falling due May 1, 1877. The form of these
coupons is the same as that above set forth.

The plaintiff in his complaint alleges himself to be the
*bona-fide* holder for value of the coupons sued on, and of the
bonds to which they were attached; but no copy of the bonds
is annexed to the complaint, nor were any bonds produced at
the trial.

A jury was waived, and the action tried in the district court
for Ramsey county, before *Brill,* J., who ordered judgment
for the plaintiff for the face of his coupons, with interest
from the time when they respectively became due. A new
trial was refused, and the defendant appealed.

*Bigelow, Flandrau & Clark,* for appellant.

*Gilman & Clough,* for respondent.

CORNELL, J. In respect to the first error assigned by de-
fendant, it is urged and insisted that "in order to the exist-
ence of a coupon, there must be or must have been a bond;
that to prove a coupon, it is essential first to show the execu-
tion of a bond; that no recovery can be had in an action upon

coupons, without producing the bonds, or showing in some way their issuance with the coupons annexed, and that the latter have been subsequently separated therefrom; that in this case there is no evidence, either of the issuance of the bonds, or that the papers called coupons, upon which a recovery was had herein, were ever attached to, or in any manner connected with, any other instrument whatever," and consequently the findings of the court in this regard are unsupported by evidence. This objection of want of proof is made as to both classes of coupons sued on, but if good as to either, it is especially so as to those claimed to have been issued by the St. Paul & Pacific Railroad Company. In reference to these latter, it is admitted in the answer that an issue of mortgage coupon bonds, of the tenor and character described in the complaint, was made by the said St. Paul & Pacific Railroad Company, on or about the second day of June, 1862, and that a portion thereof was afterwards issued and negotiated for value, and that the same are still outstanding and unpaid; but the defendant denies all knowledge or information as to how many of said bonds were so issued and negotiated, or whether the ninety-eight bonds particularly described in the complaint were of such portion. It is alleged in the complaint, and admitted in the answer substantially as alleged, that all the bonds of such issue, with the coupons annexed as mentioned in the complaint, including the ninety-eight in question, were secured by a trust mortgage deed cotemporaneously given and executed by that company upon its said branch line of railroad, and the lands and franchises thereto appertaining, to Edmund Rice, Horace Thompson and Samuel J. Tilden, as trustees. It appears in evidence that in October, 1865, the defendant made a new issue of bonds secured by a mortgage deed in trust, for the express purpose, among other things, of retiring and taking up the issue of June 2, 1862, in which it is recited and stated, as an admitted fact, that such last-named issue and mortgage amounted to $1,200,000, and that all the bonds of that issue

were issued and negotiated by said St. Paul & Pacific Railroad Company, and became an indebtedness against said company, and a lien upon the said mortgaged branch line of road, its lands and franchises, which it was the object of the defendant to provide for, so far as the bonds were outstanding and unpaid, by its new issue of October, 1865. This indebtedness is also recognized by the defendant in its annual report of 1874 to the railroad commissioner of the state. The coupons themselves, produced by the plaintiff and introduced in evidence, correspond in their tenor and character, and in their numbers, with those specified in the complaint. They bear the same date as the bonds issued June 2, 1862, and purport on their face to represent the interest to accrue upon the real-estate bonds of that company, therein referred to by their numbers. This evidence, taken in connection with the admissions in the pleadings, was sufficient as between the parties hereto to justify the court, irrespective of our statute, in its findings that the St. Paul & Pacific Railroad Company, on the 2d day of June, A. D. 1862, duly made, issued and negotiated its bonds to the amount of $1,200,000, with interest coupons attached, all payable to bearer at the times and in the sums charged in the complaint, and that the several coupons sued on are a part of such issue, and belong to the plaintiff as the lawful owner and holder thereof for value. The production of the bonds upon the trial was unnecessary. 2 Daniel Neg. Inst. § 1509, and cases there cited.

2. It is undoubted law that the charter of a corporation constitutes the law of the corporation. The burdens, duties, obligations and liabilities it imposes enter into and form a part of its corporate existence, as an inseparable part of its being. If, therefore, the obligation to assume and pay the liabilities of the St. Paul & Pacific Railroad Company in respect to the coupons in controversy is imposed upon the defendant corporation by the terms of its charter, it is binding upon it, irrespective of any other consideration; and the questions discussed by counsel as to the right of a third party

to maintain an action upon a promise made to another for his benefit, and as to the equitable liability of a corporation for debts contracted prior to its organization, for services theretofore rendered to its promoters for its benefit, need not be considered. It is admitted that the corporate existence of the defendant is derived from the agreement and legislation mentioned in the first subdivision of the answer herein. The character and effect of that legislation and agreement upon the status of the defendant as a corporation were fully considered and decided by this court in *First Division St. Paul & Pac. R. Co.* v. *Parcher*, 14 Minn. 297. It was there held that the defendant was created and became a corporate body by means of that agreement, and the proceedings had thereunder, and through the exercise in that way, with the consent of the legislature, of an authority theretofore vested in the St. Paul & Pacific Railroad Company, which enabled it thus to bring into being a new corporation, endowed with a portion of its lines of road, and the lands and franchises pertaining thereto.

The stipulations of that agreement, then, are not to be regarded in the light simply of private stipulations between the respective parties thereto, affecting them and their privies alone, but they must be treated and construed as charter provisions, binding and obligatory upon the new corporation as an inseparable part of the law of its being. Thus considered, the agreement made by Litchfield for the contemplated new and separate organization, to assume all the liabilities of the old company, of every name and nature, so far as they related to the transferred lines of road, subjected such new company, immediately upon coming into existence, to responsibility for their payment to the parties holding them, to the same extent as the old company was holden therefor. As to such liabilities, it takes the place of the old company, as its legal successor, and is primarily responsible for their payment, as fully as upon its own original obligations. Those liabilities included the coupons in question of the St. Paul & Pacific Railroad Company, for they were issued on account of the

lines of road which were transferred to the defendant upon its creation; and they clearly relate to such lines, within the meaning of the agreement making the transfer.

3. The pendency of the action brought by the trustees of the mortgage given to secure the bonds and coupons, to foreclose the same, is no bar to this action brought by the plaintiff upon a portion of the coupons of which he is the owner and holder.

The question whether, under our statutes, two distinct actions can be maintained at the same time, one at law and another in equity, for the recovery of the same debt, or whether a mortgagee, who is the lawful owner and holder of a debt and a mortgage given to secure it, can bring an action to recover the amount of the indebtedness while he is prosecuting, in another suit, the mortgage to a foreclosure, is not presented by the facts of this case. The mortgagees who are prosecuting the foreclosure suit in this case are simply trustees of the mortgage security, with no interest or authority other than that conferred by the mortgage, or such as necessarily arises out of the trust created by it. They have no interest as owners in any of the bonds or coupons secured by the mortgage, nor any title thereto by virtue of which they can exercise any control or authority over them. As suggested by plaintiff's counsel, "their trusteeship is limited to the mortgaged property which they hold as security for the bondholders, with certain defined powers over it, but none over the bonds, except to declare them due in a certain contingency, for the purpose of applying the security to their payment." Their trust terminates, and their functions as trustees cease, whenever the trust property is disposed of and applied in accordance with the terms of the trust deed.

The right of foreclosure conferred upon them extends only to a sale of the mortgaged property, and the proper application of the proceeds to the indebtedness. The proceeding for a foreclosure is in the nature of a remedy *in rem*, and not *in personam*. As trustees, they have no right nor authority to

enforce payment or collection of the bonds in any other way than that provided in the instrument creating the trust, and by that they are confined to realizing upon the security. They cannot maintain an independent suit upon the bonds or coupons separate from the mortgage, nor are they entitled, in a foreclosure action, to any personal judgment against the defendant company, or mortgagor, to be enforced by execution, for any deficiency that may remain after sale and application of the trust property.

It follows from these views that the provision of our General Statutes (Gen. St. *c.* 81, § 30,) which allows an execution to be issued upon a judgment rendered in a foreclosure action, for the collection of any deficiency remaining after the application of the proceeds of the sale of the mortgaged property, has no application to a case of this kind. In such a case, a judgment for the amount of the indebtedness evidences and determines the sum to be realized out of the security, and that is its only purpose and effect.

4. The remaining question for consideration relates to the right to recover interest—whether in the way of damages or otherwise is immaterial—upon overdue coupons payable to bearer at a particular time and place. It is settled by the weight of authority that instruments of this character partake of the nature and qualities of negotiable paper. They are designed and intended for use and circulation as such in the commercial world, and as independent securities, separate and apart from the bonds with which they are issued. Upon principle there would seem to be no good reason why the rule in respect to interest upon overdue paper of that kind ought not to be applied to overdue coupons like those in suit. Such is the holding in the federal courts, and the general tendency of the decisions in the state courts. That the rule should be a general and uniform one throughout the commercial world, unaffected by any circumstances such as the residence and citizenship of the party holding the coupons, or the character of the court in which he may chance to be able to seek a

remedy for the enforcement of his rights, is a matter of very great practical importance to the business community. Otherwise, the value of overdue coupons of the same issue, all of like import and payable at the same time and place, like those in suit, will frequently depend, not upon the character and terms of the obligations themselves, but whether the party holding them can enforce their payment in one tribunal or another." This anomalous condition of things should be avoided, if possible. In view of these considerations, we have no hesitation in following the rulings of the federal courts upon this subject, and in sustaining the decision of the court below upon this point. *Aurora City* v. *West*, 7 Wall. 82, 105, and notes; *Town of Genoa* v. *Woodruff*, 92 U. S. 502; *Burroughs* v. *Richmond County*, 65 N. C. 234; 2 Daniel Neg. Inst. § 1513.

Order affirmed.*

---

On motion for reargument, the following opinion was delivered.

GILFILLAN, C. J. The coupons sued upon were for the interest to accrue on the bonds during the six months immediately preceding May 1, 1877. Under a condition in the bonds, the trustees in the mortgage given to secure them, on a default in the payment of interest, elected in May, 1874, to declare the principal to be immediately due and payable. We shall assume, though it is not necessary to decide, that this election had the effect to make the bonds due at once for all purposes—

*ROBERT PATTERSON *vs.* FIRST DIVISION OF THE ST. PAUL & PACIFIC RAILROAD CO.

October 10, 1878.

*Bigelow, Flandrau & Clark,* for appellant.

*R. B. Galusha,* for respondent.

CORNELL, J. All the questions raised in this case are considered and decided in *Welsh* v. *First Div., etc., R. Co.,* which was argued and submitted at the same time. Order affirmed.

as well for an action on them as personal obligations, as to enforce the mortgage given to secure them.

The holder of a debt, in the absence of the debtor's consent, cannot, without transferring the debt itself, transfer to another the damages accrued or to accrue for its non-payment, so as to vest a cause of action against the debtor to recover such damages. The same is true with respect to interest accruing before default upon an ordinary contract stipulating for interest. Such stipulation, although it provide for payment of interest in instalments before the principal is to become due, is not an independent contract so that the creator may sever it from the principal, or, as has been held by this court, so that the instalments of interest may bear interest from the time they become due. In the one case the damages, and in the other the interest, is merely an incident to the debt, and inseparable from it. But they may be severed with the consent of all the parties. The case of bonds with interest coupons attached is an instance of the consent of the parties that the promise to pay interest may be severed from the principal contract. Such coupons are for the payment, at the times specified in the bonds, of the interest therein agreed on. Where, as is usually the case, the coupon is negotiable in terms, and is a full and distinct promise to pay a specified sum at a designated time, it is, although it refer to the bond, regarded for most purposes as an independent contract, and as intended by the parties to be severed from the bond, and separately transferred as a negotiable instrument, if the payee so desire. It is held, therefore, that the sums in such coupons draw interest from the time they fall due, that they may be severed and transferred without the bond, and are entitled, when so transferred, to the immunities and privileges of negotiable paper.

The effect of the extinguishment of the bond, under any condition in it, before the time covered by a coupon, upon the coupon in the hands of a purchaser for value, before due and without notice, is a question not presented by this case.

These bonds provide that in case of default, for a specified time, in payment of interest, the trustees may declare the principal due at once. Upon their becoming due by such election, the debtor might pay the bonds at once, and so extinguish them. Whether such extinguishment would also extinguish previously transferred coupons for interest to accrue subsequently, we have no occasion to decide. The principal is unsatisfied, for these bonds are not extinguished, and there is still accruing on them the same rate as before the trustees elected to declare the principal due. The only effect claimed from the bonds so becoming due is that the rate now accruing on them is damages, as distinguished from contract interest, and this presents the point upon which the reargument was allowed. The argument is that while parties may contract for interest before default in payment of the principal, they cannot contract for interest after default, and what accrues after default is not allowed by reason of contract, but by operation of law. That when the principal in these bonds became due, the agreement to pay interest was superseded and extinguished by the law, which disables parties to stipulate for interest after default, and, in lieu of such interest, allows damages at the rate which it establishes for interest. That the coupons are but tokens of the agreement to pay interest, and when such agreement to pay interest was superseded and extinguished, they were extinguished also.

The coupons covering any period are for the payment of the compensation for the retention and use of the principal during that period, and were intended as evidences of the holder's right to receive the amount of such compensation. Undoubtedly, the parties expected that the bonds would not become payable until the time stipulated for their payment, and that the agreement for the rate of interest would control the rate until that time. They also contemplated that if, under the conditions in the bonds, the principal should become due before that time, compensation for the retention and use of the principal would continue (as allowed by law, if not as

fixed by the contract,) until such principal should be repaid. The coupons cover the whole time until the principal was, according to the terms of the bonds, to become due. As it was intended that they might be transferred, and be held by others than the holders of the bonds, there can be no doubt that it was the intention that whoever held them should be entitled, up to the amount expressed in them, to the compensation for the retention and use of the principal during the period covered by them. Whether the amount of compensation should be controlled by the contract or fixed by law; whether such compensation be called interest or damages, the right to receive it was intended to pass by the transfer of the coupons. In this case, the rate agreed on for interest, and the rate allowed by law for damages, are the same, and it is unnecessary to consider to whom the excess would go if the damage rate were greater than the interest rate, or who would bear the loss if it were less.

There is no reason to change the decision.