PLATTE VALLEY IRRIGATION DISTRICT ET AL., APPELLANTS, V.
ALBERT C. TILLEY ET AL., APPELLEES.
5 N. W. (2d) 252

FILED AUGUST 7, 1942.   No. 31319.

*Hoagland, Carr & Hoagland,* for appellants.

*Walter R. Johnson, Attorney General, John L. Riddell, Beeler, Crosby & Baskins, Neighbors & Danielson, Mothersead, & York, Yale H. Cavett, Frank P. Johnson, F. J. Reed, F. E. Williams, Howarth N. Olsen, Auburn H. Atkins, E. E. Richards, James H. Anderson* and *Lewis F. Shull, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

This is a suit in equity to compel the officials of the bureau of irrigation, the Platte Valley Public Power and Irrigation District, and numerous junior appropriators of water from the North Platte river, to respect plaintiff district's priority of appropriation, to enjoin unlawful diversions of water to which the plaintiff district as a senior appropriator is entitled, and to secure a decree establishing the relative rights of the parties to the waters of the North Platte river. The trial court found for the defendants and dismissed the action. The plaintiffs appeal from the judgment of dismissal.

The Platte Valley Irrigation District, which will hereafter be referred to as the plaintiff district, has an appropriation for irrigation from the North Platte river of 300 second-feet of water with a priority date of May 31, 1884. There is no dispute among the parties that plaintiff district was entitled to receive 191 second-feet of water to irrigate approximately 14,000 acres of land within its district during the irrigation season of 1940, the irrigation season involved in this suit. The plaintiffs Milton H. Fry, William D. Eshleman and Paul Koch are owners of irrigated farm lands within the plaintiff district and are entitled to the beneficial use of a portion of the waters appropriated by the plaintiff district. It is not questioned that the plaintiff district has an appropriation for irrigation prior in time to that of any of the appropriators of the waters of the North Platte river that have been made parties to this litigation.

The defendant Platte Valley Public Power and Irrigation District, hereinafter referred to as the defendant power district, maintains a diversion dam in the North Platte river

about 30 miles above plaintiff district's headgate for the purpose of diverting water from the river into its storage reservoir, then through its hydroelectric generating plant and back to the river. Its only appropriation of natural flow is for power purposes, subject to the rights of prior appropriators. It is claimed by the plaintiff district that the defendant power district is without authority to impound the waters of the river behind its diversion dam when they are needed by prior appropriators for irrigation purposes.

The defendants Winters Creek Canal Company, Castle Rock Irrigation District, Enterprise Irrigation District, Minatare Mutual Canal & Irrigating Company, Central Irrigation District, Bridgeport Irrigation District, Alliance Irrigation District, Lisco Irrigation District, Chimney Rock Irrigation District, Farmers Irrigation District, Nine Mile Irrigation District, Ramshorn Irrigation District, Browns Creek Irrigation District and the Short Line Irrigation District are public corporations organized under the irrigation laws of the state, holding appropriations of water from the North Platte river for irrigation purposes junior in point of time to that held by the plaintiff district. When mentioned as a group they will hereafter be referred to as the defendant irrigation districts, otherwise by the names hereinbefore used. The defendant irrigation districts are charged generally with unlawful diversions of water belonging to the plaintiff district contrary to the orders of the bureau of irrigation, thereby depriving plaintiffs of the water to which they are entitled.

The defendants Roy L. Cochran, Governor of Nebraska in 1940, Dwight Griswold, Governor of Nebraska when the case was tried, Albert C. Tilley, secretary of the department of roads and irrigation, and state engineer in 1940, Wardner G. Scott, secretary of the department of roads and irrigation, and state engineer when the case was tried, and Robert H. Willis, at all times herein mentioned the chief of the bureau of irrigation, hereafter referred to as the defendant state officers, were made parties defendant because of their alleged failure to administer the waters of the river in ac-

cordance with the priority rights of the parties, and against whom the plaintiffs demand a mandatory injunction to compel the enforcement of the rights of the parties according to priority.

The defenses of the parties defendant will be discussed in connection with the evidence adduced and will not be quoted with particularity in this part of the opinion. It is a decision upon these questions, in connection with the evidence with reference thereto, together with a determination of the relative rights of all the parties, that is presented by the record in this case.

Each of the defendants appeared specially and objected to the jurisdiction of the court over said defendants. The question has been previously determined by this court. In *State v. Cochran*, 138 Neb. 163, 292 N. W. 239, this court said: "An action against a public officer for any neglect of official duty must, under the provisions of section 20-404, Comp. St. 1929, be brought in the county where the cause or some part thereof arose." It was therein determined that the cause of action, in a case similar to the one at bar, arose in the county where the resulting damages occurred. In *Loup River Public Power District v. North Loup River Public Power and Irrigation District*, p. 141, *post*, 5 N. W. (2d) 240, this court in reaffirming the decision in *State v. Cochran, supra,* said: "A suit for an injunction, and the establishment of the relative rights of the parties incident thereto, against the executive and administrative officers of the state to compel the enforcement of appropriative water rights by restraining unlawful diversions of water by junior appropriators is properly maintainable in the county where the resulting damages occur." We necessarily conclude that the defendant state officers, charged with negligence in the performance of their administrative duties, could properly be subjected to the jurisdiction of the district court for Lincoln county, the county where the damages occurred.

It is further urged by some of the defendant irrigation districts that as public corporations they could not be subjected to suit except in the county of their domicile. This

question was also determined in *Loup River Public Power District v. North Loup River Public Power and Irrigation District, supra,* wherein we said: "Where a court has jurisdiction of the subject-matter of an action, and obtains service of summons upon a defendant properly amenable to service in that county and having a substantial interest in the subject of the suit adverse to plaintiff, a summons may properly issue to a defendant public corporation domiciled in another county, under the provisions of section 20-504, Comp. St. 1929." Under the authorities cited, the district court for Lincoln county obtained jurisdiction over the persons of all the defendants and had, as well, jurisdiction of the subject-matter of the suit.

This suit was commenced on September 13, 1940, to secure a mandatory injunction against the defendant state officers and injunctive relief against the other defendants, to secure for plaintiff district the water to which it was entitled and which it had not received since July 1, 1940. It is alleged and the evidence shows that plaintiff district was not receiving the amount of its appropriation at the time of filing this suit. Certain of the defendant irrigation districts allege that, prior to the trial of the case, water was released which permitted plaintiff district to divert the water to which it was entitled and that, consequently, the illegal and wrongful acts of the defendant irrigation districts and of the defendant power district no longer infringed upon the rights of plaintiff district and that this defeated plaintiffs' right to relief. We think the rights of the parties under the circumstances here shown are to be determined by the situation existing when the suit was commenced. This question also seems to have been decided in *State v. Cochran, supra,* wherein it is said: "We doubt not that, if a default had existed at the time the writ of mandamus was applied for, the court would have jurisdiction to determine relators' right to it even if the default no longer existed when the case came on for trial. Neither do we doubt the right of the court, if default exists, to issue the writ of mandamus and make it effective as to the performance of similar duties in the fu-

ture. Any other rule would require the courts to administer justice piecemeal. But we are obliged to adhere to the rule that a default must exist when the writ is applied for, to properly invoke the extraordinary writ of mandamus." A default existed when the suit was started and the court had jurisdiction to determine plaintiffs' rights and the relative rights of the parties to the litigation under the facts which existed at that time. See *Patterson v. Barber Asphalt Paving Co.*, 94 Minn. 39, 101 N. W. 1064; *City of Austin v. Cahill*, 99 Tex. 172, 88 S. W. 542; *United States v. Workingmen's Amalgamated Council*, 54 Fed. 994.

The controversy between the plaintiffs and the defendant power district resolves itself around the failure of the latter to release certain waters impounded behind defendant power district's diversion dam some 30 miles above the plaintiff district's headgate. The evidence shows that the defendant power district had five water appropriations from the state with priority dates ranging from January 1, 1934, to May 8, 1937. All of its appropriations are reservoir appropriations except one which is from the natural flow of the stream for 975 second-feet for power purposes. All are inferior in point of time to the appropriation of the plaintiff district.

The defendant power district constructed a dam at its headgate in 1936 for the purpose of making the diversions authorized by its appropriative rights. The dam is about nine feet in height and impounds approximately 900 acre-feet of water. The record shows that plaintiff district, at a time when there was insufficient natural flow in the river to supply the amount of its appropriation, demanded that the pondage behind the dam be released for the purpose of augmenting the natural flow of the river to the amount of plaintiff district's appropriation. It was the contention of plaintiff district that this pondage was public waters subject to distribution under prior adjudications. With this theory we cannot agree. The very purpose of the dam was to raise the water to a height which would permit diversions into its storage reservoirs. The granting of the right to construct the dam carries with it the incidental right to hold

water behind it, subject to the rights of other appropriators on the river. The evidence is clear that the pondage so impounded was captured during the nonirrigation season or from waters during the irrigation season not subject to appropriation by the plaintiff district. This being true, the water is not subject to appropriation as a part of the natural flow of the stream and is entitled to be held by the defendant power district as a use incidental to the operation and maintenance of defendant power district's works. Comp. St. 1929, sec. 46-617. The evidence shows that the water was first accumulated during the nonirrigation season and held intact until July 21, 1940. On that date the defendant power district, by some arrangement made with the plaintiff district, released water to it for a number of days. The water thus released was recovered on or about August 1, 1940, on the occasion of rains which provided water in excess of the appropriation to which plaintiff district was entitled, and which seems to have been done in accordance with the agreement. In any event, the pondage was not subject to any rights held by the plaintiff district.

It is urged, however, that the defendant power district refused to obey the orders of the chief of the bureau of irrigation on August 15, 1940, wherein defendant power district was ordered to release 100 second-feet of water as long as the pondage remained, in addition to the natural flow of the stream. The record shows that such an order was made and that defendant power district did not comply with it. It appears that on August 14, 1940, plaintiff district brought a suit to obtain a peremptory writ of mandamus to compel the chief of the bureau of irrigation to order the pondage released. The peremptory writ was granted without notice and the chief of the bureau of irrigation complied with it by issuing the order. The defendant power district ignored the order. On August 23, 1940, the district court for Lincoln county, on its own motion, vacated the peremptory writ which it had previously entered. Plaintiff district appealed to this court from the order vacating the peremptory writ of mandamus and we held that the issuance of the writ was

void for want of notice and affirmed the court's action in vacating the peremptory writ. *State v. Cochran,* 139 Neb. 324, 297 N. W. 587. It seems to us that as the peremptory writ of mandamus was void, and the order not in accord with priority rights, the interests of the defendant power district were in no respects jeopardized by a failure to comply with such order. We are of the opinion that the trial court was in all respects correct in finding that plaintiff district had no right to the water impounded behind the dam and in assessing the costs incurred by the defendant power company against the plaintiff.

The record shows that on or about June 27, 1940, plaintiff district commenced a series of complaints to the defendant state officers in which it demanded that water be provided in accordance with its priority. From June 27 to August 6, plaintiff district received all the water to which it was entitled on only a few days, most of those being from July 31 to August 4. On August 6, 1940, the Blue Creek Irrigation District commenced an injunction suit in Garden county against the defendant state officers and obtained a ten-day restraining order from the county judge of that county. Joined with the plaintiff in this suit were five landowners owning land adjacent to Blue Creek in which they claim to have a riparian right to use the water thereof for irrigation purposes. The prayer of the petition is, among other things, that plaintiffs' appropriation rights be decreed to entitle them to take water sufficient to water 2,874.7 acres of land in the Blue Creek Irrigation District and that defendant state officers be enjoined from preventing their so doing. On August 15, 1940, the suit was dismissed by plaintiffs without prejudice. Although the issues in this case were never determined, and we make no attempt to do it here, it is quite evident that, in any event, the Blue Creek Irrigation District was not entitled to take water under its appropriative rights at the time the restraining order was issued. We think, also, that if the plaintiff landowners desire to assert any riparian rights to the waters of Blue Creek by diversion through the Blue Creek Irrigation Dis-

trict headgate, it will be necessary that such rights be specifically determined in order that they will not interfere with the orderly distribution of the waters of the stream. The headgate and canal of the district were constructed for the purpose of diverting the district's appropriated waters and are subject to the general regulation and control of the bureau of irrigation in distributing the appropriated public waters of the stream. Any riparian rights existing are appurtenant to the lands adjacent to the stream. Riparian waters may be diverted only on the lands to which they are appurtenant. If, by chance, the district's headgate is upon the land of a riparian claimant, we know of no right on his part to divert it through such headgate canal without the approval of the district and the bureau of irrigation. We conclude therefore that the assertion of riparian rights by plaintiff landowners in this suit was merely a subterfuge by which the Blue Creek Irrigation District secured a restraining order to which it was never entitled. The fact that the suit was dismissed just prior to the termination of the ten-day restraining order is further evidence of that fact. We conclude, therefore, that as against all prior appropriators the Blue Creek Irrigation District, and the plaintiffs who joined with it, had no right to injunctive relief and that the suit in question was not brought in good faith and constituted a trespass against the rights of senior appropriators on the river. We realize that the Blue Creek Irrigation District is not a party to this suit, and that no binding adjudication as to it can be made. The discussion of the rights of the parties to that litigation is important therefore only as it affects the rights of the parties to the suit at bar.

On August 5, 1940, one Basil Roberts commenced an action in the district court for Garden county against the defendant state officers, alleging that he was a lessee of lands in the Hooper Irrigation District and entitled to the riparian use of the waters of Blue Creek for irrigation purposes. The allegations of the petition are that he, in order to save expense, diverts his riparian waters through the headgate of the Hooper Irrigation District. With the state officers

enjoined, the Hooper Irrigation District proceeded to take water for all the lands in its district. What we said on this subject in the discussion of the Blue Creek Irrigation District injunction suit has application here. On August 16, 1940, this suit was dismissed without prejudice. The evidence shows also that the lands irrigated by Roberts do not touch the banks of Blue Creek and consequently are not riparian lands. We necessarily hold that the petition states no ground for injunctive relief against the defendant state officers. It is evident to us that the suit was not brought in good faith and constituted a trespass against the rights of senior appropriators on the river.

The institution of the injunction suits by the Blue Creek Irrigation District and Basil Roberts provoked the commencement of nine other similar suits by irrigation districts having rights prior in time to the plaintiffs in those suits, but junior in time to the appropriation of the plaintiff district in the suit at bar.

On August 9, 1940, the Lisco Irrigation District filed its suit and obtained a restraining order from the county judge of Garden county enjoining any interference with the district's headgate. This restraining order was kept in effect until August 20, 1940, when a dismissal without prejudice was filed. On September 4, 1940, a second suit was filed and a restraining order obtained which remained in force until the suit was dismissed without prejudice on September 14, 1940. The allegations of the petition were that there was sufficient water in the river to supply plaintiff and all senior appropriators, and that the closing or threatened closing of plaintiff's headgate was arbitrary and capricious on the part of the defendant state officers. The evidence produced in the present case disproves that fact. It is evident to us that this suit was not commenced in good faith and was merely a method of obtaining waters by trespassing upon the vested rights of others entitled thereto.

On August 7, 1940, the Union Irrigation and Water Power Company filed its suit and obtained a restraining order similar to that obtained by the Lisco Irrigation District. The

grounds alleged to obtain it were the same. An extension of the restraining order was granted by the county judge of Garden county. The case was dismissed without prejudice on August 20, 1940. It is clear from the undisputed evidence in the case at bar that the action was not brought in good faith and was merely a method of taking water belonging to others under the forms of law.

On August 13, 1940, the Enterprise Irrigation District filed its petition and obtained an order from the county judge of Scotts Bluff county restraining the defendant state officers from closing its headgate. The basis of the action was that the injunction orders commenced in Garden county permitted unlawful diversions by junior appropriators, but for which the headgate of the Enterprise Irrigation District would not have been ordered closed. Unlawful diversions by other junior appropriators are also alleged to have been permitted by the defendant state officers. We are of the opinion that these allegations do not constitute a cause of action. If the mere allegations that an injunction was wrongfully issued by a court having jurisdiction of the subject-matter, or that thefts by junior appropriators make necessary the closing order, are sufficient to invoke the injunctive powers of a court of equity, the orderly administration of the stream will be replaced with chaos and dissention. It is urged that the correctness of the right to injunctive relief has been finally determined, no appeal having been taken from the district court's final order. While this may be true as between the parties to that litigation, it has no such binding effect upon the plaintiff district. The record shows that plaintiff district attempted to intervene in the injunction suit and was denied the right of intervention by the trial court. We think a senior appropriator whose rights may be affected, if the prayer of the petition is granted, has an absolute right to intervene to protect his interests. Comp. St. 1929, sec. 20-328. Having been denied that right, it would be highly illogical to assert that the doctrine of *res adjudicata* applied to him. We necessarily conclude that as to the plaintiff district, under the evidence in this

record, the action of the district court for Scotts Bluff county, in granting the injunction order, deprived it of no rights and that the water taken by the Enterprise Irrigation District under said injunction order belonged to appropriators senior to it. The issuance of an erroneous restraining order, even if sought in bad faith, or the theft of waters by junior appropriators along the stream, cannot justify the taking of water belonging to senior appropriators, either directly or by the promiscuous use of the injunctive powers of an equity court.

Similar suits were commenced on or near August 13, 1940, by the Bridgeport Irrigation District, the Minatare Mutual Canal and Irrigation Company, Castle Rock Irrigation District, Winters Creek Irrigation District, Central Irrigation District, and the Alliance Irrigation District. All came to the same result as did the Enterprise case. It will serve no good purpose to repeat the details concerning these cases and we will conserve space by making our comments in the Enterprise case applicable to all.

The rights of all the parties to this suit have been adjudicated and their priorities finally determined. No question is here presented as to the amount of water to which any of the parties are entitled. It is the duty of the chief of the bureau of irrigation to administer the waters of the North Platte river and its tributaries in accordance with the adjudicated rights of the parties. The orderly administration of the stream becomes particularly important when there is a shortage of water and the burden is cast upon the bureau of irrigation to calculate the amount of available water, distances, lag, losses, gains, and many other conditions in delivering water to appropriators. It is urged that the use of spot readings, and other similar sources of information employed by the bureau of irrigation, are too inaccurate to warrant admission as competent evidence. It is not claimed that such evidence imparts complete accuracy. It is simply the best available evidence at the time and is properly admissible, not as conclusive proof, but as evidence of the facts it purports to show. Our remarks in *State v. Cochran, su-*

*pra,* with reference to this subject are directed to the fact that accurate figures are not obtainable and that uncertainty to some extent is bound to exist. This does not, however, make such evidence inadmissible.

The suits brought by the Blue Creek Irrigation District and Basil Roberts in Garden county, as we have heretofore said, were not brought in good faith. Such suits are a menace to the orderly administration of the waters of the stream. It not only permits the tortious diversion of waters to persons not entitled to them, but it jeopardizes the rights of every senior appropriator on the river above and below the wrongful diversion. It never was the province of courts of equity to extend its protective mantle to the perpetrators of wrongs and iniquities. Such suits are condemned, not only in law, but by principles of morality as well. Restraining orders in such suits are not to be peddled out to applicants as groceries over a counter, and a court which will so do violates his oath of office and brings disrespect upon the judicial position he holds. It is a serious reflection upon the judiciary when the orderly administration of the waters of a great river are spasmodically thrown into confusion and chaos by the ill-advised and irresponsible exercise of judicial authority. It creates an intolerable condition which ought, and must be, eliminated. In this connection it might be well to refer to the Canons of Judicial Ethics adopted by this court, wherein it is said in Canon 16: "He (the judge) should remember that an injunction is a limitation upon the freedom of action of defendants and should not be granted lightly or inadvisedly. One applying for such relief must sustain the burden of showing clearly its necessity and this burden is increased in the absence of the party whose freedom of action is sought to be restrained even though only temporarily." The Lisco Irrigation District and Union Irrigation and Water Power Company, in the procurement of their restraining orders, are in no better position than the two first above named. We find that the Blue Creek Irrigation District, Hooper Irrigation District, Lisco Irrigation District and the Union Irrigation and Water Power Com-

pany appropriated water wrongfully without the semblance of right during the irrigation season of 1940 and that the water so acquired belonged to and was the vested property of senior appropriators on the North Platte river.

The record discloses that the two injunction suits in Morrill county and the five in Scotts Bluff county were commenced primarily because of the wrongful diversions by the Garden county appropriators. It is alleged, and the chief of the bureau of irrigation concedes, that if the headgates of the districts in Garden county had been closed as he had ordered, it would not have been necessary to issue closing orders against the Scotts Bluff and Morrill county districts. However, we are obliged to say that the diversions of water by the issuance of a wrongful restraining order must be treated as a condition. The bureau of irrigation, as an arm of the state, ought to respect the orders of the courts. It certainly is not within the province of the chief of the bureau of irrigation to review and determine the correctness of judicial orders issued by courts having jurisdiction of the subject-matter. This being true, he must of necessity treat the situation as he would any other loss over which he has no control. It being a condition, it affords no basis for an injunction which in effect prevents the distribution of remaining waters to appropriators according to priority. We realize that the injunctions procured in Scotts Bluff and Morrill counties were tried on their merits and final judgments sustaining them entered. We cannot, of course, review their correctness in this proceeding except as to their effect on the plaintiff district which was not a party to those actions. In this respect we are of the opinion that the rights of plaintiff district were in no way affected and that the waters thus diverted were, in part at least, waters belonging to that district. We cannot refrain from saying that the suits filed by the Scotts Bluff and Morrill county irrigation districts, viewed in the light of the evidence in the present case, were improvidently commenced. The issues pleaded which were not alleged in the Garden county cases, plus the fact that they were upheld by the district court, re-

strains us from making an outright statement that they were not brought in good faith. We realize the intense desire on the part of appropriators to save burning crops, especially when water is flowing by their headgates. But one has no more right to take the water of a senior appropriator than he has to take grain from a neighbor's granary and convert it to his own use. Until conscience and good morals play some part in the administration of the public water of a stream, the services of the chief of the bureau of irrigation in the capacity of a policeman will be required and, so long as his acts do not become arbitrary and capricious, the courts are obliged to give effect to them. In connection herewith it might be noted that the conduct of counsel in aiding and abetting the procurement of restraining orders in bad faith is subject to serious criticism, and even, if the practice be persisted in, to the invocation of the disciplinary powers of this court. We desire to call attention to Canon 30 of the Canons of Professional Ethics adopted by this court, wherein it is said in part: "The lawyer must decline to conduct a civil cause or to make a defense when convinced that it is intended merely to harass or to injure the opposite party or to work oppression or wrong. * * * His appearance in court should be deemed equivalent to an assertion on his honor that in his opinion his client's case is one proper for judicial determination." These are not idle words and were adopted with the expectation that ethical lawyers would give credence thereto, and that those who persist in violating the rule shall thereby subject themselves to serious penalty. Some leniency of expression should be shown because it involves a practice long indulged in by the irrigation interests of the state, yet we feel obliged to say that future infractions will meet with suitable corrective measures. And what we have here said pertaining to the conduct of counsel applies as well to the attorneys for the plaintiff district as to counsel for the defendant irrigation districts for the reason that it appears in the record that plaintiffs' counsel aided and abetted the Blue Creek Irrigation District and Basil Roberts in procuring their restraining orders.

We hold that plaintiff district was entitled to the waters wrongfully appropriated by the Scotts Bluff and Morrill county irrigation districts, or so much thereof as was required to provide the amount of their appropriation, assuming, of course, that a beneficial amount could be delivered at its headgate. We think, therefore, that the plaintiff district's right to an injunction is superior to any rights possessed by the defendant irrigation districts and that plaintiff district was entitled to a mandatory injunction compelling the delivery of the disputed waters to the plaintiff district.

It might be contended that, as the state officers had already been enjoined by the final order of the district court for Scotts Bluff county, the district court for Lincoln county was without power to issue a mandatory injunction to compel the doing of the very act previously enjoined. If the parties and issues were the same, the court first assuming jurisdiction would have the sole jurisdiction of such a proceeding. That is not the case here. An injunction order against the state officers issued at the instance of a junior appropriator must give way to an injunction or mandamus order issued at the behest of a senior appropriator when the junior appropriator has been made a party to the litigation.

It is further alleged that the Chimney Rock Irrigation District, Alliance Irrigation District, Ramshorn Irrigation District, Short Line Irrigation District, Farmers Irrigation District, Nine Mile Irrigation District and Browns Creek Irrigation District neglected to obey the orders of the bureau of irrigation with reference to opening and closing their headgates, and to have taken water for irrigation purposes without right.

As to the Nine Mile Irrigation District, the evidence shows that water passed through the district's headgate for one day as the result of mistake which was corrected to the satisfaction of the chief of the bureau of irrigation. There is evidence that water found in the ditch on other days was not diverted through the district's headgate, but consisted of seepage and run-off waters which flowed into the ditch be-

low the headgate. The evidence is sufficient to sustain the finding of the trial court that this district neither violated the closing orders of the bureau of irrigation nor abstracted water to which it was not entitled.

As to the Farmers Irrigation District, it was urged that it was taking unappropriated waters from Akers Draw, Sheep Creek, Dry Spotted Tail, Wet Spotted Tail and Tub Springs, they being natural drains carrying live waters to the North Platte river. The evidence shows that these waters were captured and used by the Farmers Irrigation District, but that such waters were measured and applied upon the amount of water to which it was entitled by virtue of its appropriation right. This being done with the consent and approval of the bureau of irrigation, we find nothing in it incompatible with the proper distribution of the waters of the stream in accordance with priority. It is further shown that the bureau of irrigation closed the headgate of this district for one day and then permitted it to reopen on the theory that a usable quantity of water could not be delivered to the plaintiff district. No evidence was offered to show that this determination on the part of the bureau of irrigation was arbitrarily made. The evidence therefore sustains the finding of the trial court that the Farmers Irrigation District was guilty of no wrong charged in plaintiffs' petition.

There is no evidence in the record of any violation of orders or taking of waters to which it was not entitled by the Browns Creek Irrigation District. The trial court's finding in favor of the district was therefore correct.

The evidence shows without question that the Chimney Rock Irrigation District, Ramshorn Irrigation District, Short Line Irrigation District and the Alliance Irrigation District, in addition to the waters taken while the restraining order was in effect, wrongfully diverted waters of the river which did not belong to them and in which senior appropriators had a vested right.

The defendant state officers contend that they have administered the waters of the stream in the utmost good faith

and that no cause of action therefore exists against them. As we have heretofore said, the bureau of irrigation as an arm of the state should obey the judgments and orders of courts having jurisdiction of the subject-matters upon which such orders are based. We therefore hold that the obeyance of the restraining orders issued and the giving of notice of such orders to the attorney general constitute a full compliance with duty as found by the trial court. However, it is our considered opinion that as to the Chimney Rock Irrigation District, Ramshorn Irrigation District, Short Line Irrigation District, and the Alliance Irrigation District during the times they had no restraining order in force, the bureau of irrigation did not perform its full duty. The evidence shows that closing orders were issued against these districts which were not obeyed. We think the duty is then cast upon the bureau of irrigation to enforce its order by closing and locking the headgate of the offending districts. This does not appear to have been done. We are inclined to the view therefore that the bureau of irrigation was derelict in its duty to this extent. On all other points we think the evidence shows a good faith and efficient administration of the waters of the river in accordance with law.

In determining the relative rights of all the parties to this suit, we have come to the following conclusions: That plaintiff district was, on the date of the commencement of its suit, entitled to a temporary injunction against the Lisco Irrigation District, Winters Creek Canal Company, Castle Rock Irrigation District, Enterprise Irrigation District, Minatare Mutual Canal & Irrigating Company, Central Irrigation District, Bridgeport Irrigation District, Alliance Irrigation District, Chimney Rock Irrigation District, Ramshorn Irrigation District and the Short Line Irrigation District, restraining the diversion of water from the North Platte river in violation of the closing orders of the bureau of irrigation and contrary to the rights of senior appropriators, including the plaintiff district; that a mandatory injunction issue against the bureau of irrigation to compel the enforcement of its orders closing the headgates of the Chim-

ney Rock Irrigation District, Ramshorn Irrigation District, Short Line Irrigation District, and the Alliance Irrigation District during the times the closing of its headgate was not restrained, by shutting and locking the headgates of the districts in accordance with authority granted by section 81-6304, Comp. St. 1929, and that said districts be permanently enjoined from taking the appropriated waters of senior appropriators contrary to the closing orders of the bureau of irrigation; and that the cause be dismissed as to the Farmers Irrigation District, Nine Mile Irrigation District, Browns Creek Irrigation District and the Platte Valley Public Power and Irrigation District.

It is further ordered that the costs incurred by the Nine Mile Irrigation District, Farmers Irrigation District, Browns Creek Irrigation District and the Platte Valley Public Power and Irrigation District be taxed against the plaintiff district, and that all other costs be taxed against the Lisco Irrigation District, Winters Creek Canal Company, Castle Rock Irrigation District, Enterprise Irrigation District, Minatare Mutual Canal and Irrigating Company, Central Irrigation District, Bridgeport Irrigation District, Chimney Rock Irrigation District, Ramshorn Irrigation District and the Short Line Irrigation District.

REVERSED.