LOUP RIVER PUBLIC POWER DISTRICT, APPELLANT, V. NORTH LOUP RIVER PUBLIC POWER AND IRRIGATION DISTRICT ET AL., APPELLEES.

5 N. W. (2d) 240

FILED AUGUST 7, 1942. No. 31410.

142

*Neighbors & Danielson,* for appellant.

*Sorensen & Kyle, Guy Laverty, Walter R. Johnson, Attorney General,* and *John L. Riddell, contra.*

Heard before ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

This suit was commenced by the Loup River Public Power District against the North Loup River Public Power and Irrigation District and certain executive and administrative officers charged with the administration of the public waters of the state, to secure a decree establishing the relative rights of the parties to the waters of the Loup river and its tributaries and to enjoin the North Loup River Public Power and Irrigation District from diverting, and the executive and administrative officers of the state from permitting diversions of, water in violation of the rights of the Loup River Public Power District. The trial court sustained a general demurrer to the petition and, plaintiffs having elect-

ed to stand thereon, dismissed the action. From this order plaintiff appeals.

For convenience, the Loup River Public Power District will be referred to herein as the plaintiff district, the North Loup River Public Power and Irrigation District will be referred to as the defendant district, and the executive and administrative officers will be referred to as the defendant state officers.

Plaintiff's petition alleges that on February 24, 1934, it procured from the department of roads and irrigation an appropriation of water from the Loup river for power purposes, said appropriation being 3,500 cubic feet of water per second of time with a head of 118 feet and a priority date as of September 15, 1932. Immediately thereafter plaintiff paid all amounts due the state for the lease of the water, commenced the construction of its works for the generation and distribution of electric power, and since the completion thereof has been engaged in the generation and distribution of electric power. On September 15, 1936, defendant district was granted an appropriation of water from the North Loup river for irrigation purposes in the amount of 260 second-feet, with a priority date of March 28, 1933, and limited to the use of one acre-foot of water for each acre of land to which water is usefully applied prior to October 1, 1944. Due to the fact that its irrigation works were not constructed to water all the lands described in its application, defendant district's appropriation was subsequently reduced to 238 second-feet. Plaintiff district alleges that at no time has the defendant district irrigated more than 18,-000 acres of land.

Plaintiff district alleges that from April 1, 1940, to November 1, 1940, it was unable to obtain its appropriation of 3,500 cubic feet of water per second, excepting two days in May, seven days in June and three days in October, and that the water available for appropriation by the plaintiff district at all other times was materially reduced by diversions up river in counties other than Platte county by the defendant district in excess of its appropriative rights. This suit

was commenced in Platte county to enjoin the defendant district from making these unlawful diversions of water and to restrain the defendant state officers from permitting such unlawful diversions.

The petition discloses that plaintiff district maintains its office and principal place of business, including its hydro-electric plant, in the city of Columbus, Platte county, Nebraska. It appears from the showing made in support of defendant district's special appearance that the principal place of business of defendant district is in the city of Ord, Valley county, Nebraska, and that the district is located within Valley, Loup and Garfield counties, and no other. Process was served on the defendant district by the delivery of a summons to its president in Valley county. Service of summons was had on the defendant state officers in the counties of their legal residence, none of which was within Platte county.

The statute upon which we are asked to sustain the jurisdiction of the court provides in part as follows: "Actions for the following causes must be brought in the county where the cause or some part thereof arose: * * * Second. An action against a public officer, for an act done by him in virtue of or under color of his office, or for any neglect of his official duty." Comp. St. 1929, sec. 20-404.

In *State v. Cochran*, 138 Neb. 163, 292 N. W. 239, a case similar in principle, this court said: "An action for mandamus against the administrative officers of the state to compel the proper enforcement of the irrigation laws, and thereby prevent unlawful diversions of water by junior appropriators, is properly maintainable in the county where the resulting damages occur." Defendant state officers attack the correctness of this rule and urge that this court depart therefrom.

A text-writer states the applicable rule in the following language: "If however, a tortious act, committed in one county, occasions damage to land or any other local subject, situate in another; an action for the injury thus occasioned, may be laid in either of the two counties, at the choice of the

party injured. (n) Thus, if by the diversion or obstruction of a watercourse, in the county of A., damage is done to lands, mills or other real property in the county of B., the party injured may lay his action in either of those two counties." Gould's Pleadings (5th ed.), p. 105.

In *Bulwer's Case,* the court said : "When one matter in one county is depending upon the matter in another county, there the plaintiff may choose in which county he will bring his action. * * * In all cases where the action is founded upon two things done in several counties, and both are material or traversable, and the one without the other doth not maintain the action, there the plaintiff may choose to bring his action in which of the counties he will. * * * If a man doth not repair a wall in Essex, which he ought to repair, whereby my land in Middlesex is drowned, I may bring my action in Essex, for there is the default, as is adjudged in 7 H. 4. 8. or I may bring it in Middlesex, for there I have the damage." 4 Coke's Reports, pt. 7, p. 1.

And in *Barden v. Crocker,* 10 Pick. (Mass.) 383, it was said : "And the second point is equally clear for the plaintiff. He may unquestionably maintain his action in either county ; in Bristol, where the obstruction was raised, as well as in Plymouth where the injury was sustained."

In *Deseret Irrigation Co. v. McIntyre,* 16 Utah, 398, 52 Pac. 628, the court in a similar case applied the following line of reasoning : "As has been observed, an action is 'the lawful demand of one's rights,' and such lawful demand is made because of a wrong done and an injury suffered. The wrong and the injury are both necessary elements, and the absence of either one of them would be fatal to a suit. The two elements must therefore exist and unite in order to form a good cause of action. The plaintiffs herein claim that the defendants constructed dams and ditches in Sanpete county, and by means thereof wrongfully diverted water from the Sevier river, and that, as a sequence, the plaintiffs were deprived of the water which of right belonged to them, and with which they were entitled to fill their dams and ditches in Millard county, to distribute it to their stock-

holders' lands in that county. The right of plaintiffs to have that portion of the river, to which they were entitled, flow in the natural watercourse to the heads of their ditches, is an incorporeal hereditament appurtenant to the watercourse. The complaint shows that this right was invaded by a wrongful diversion in Sanpete county, by the defendants, and that damage or injury resulted to the plaintiffs in Millard county. The facts concerning the wrongful diversion and consequent injury are all essential to the plaintiffs' right of action. Neither the facts relating to the diversion alone, nor those relating to the injury alone, are sufficient to constitute a cause of action against the defendants. This is so, because the mere construction of dams and ditches in Sanpete county, or even the diversion of the water from the river, gave the plaintiffs no right to complain, so long as the water, to which they were entitled, was not diverted thereby. Likewise, as to the injury, unless it were shown that it was caused by the wrongful acts of the defendants. Thus it is plain that some of the material facts arose in Sanpete county and some in Millard county, and the cause of action may properly be said to have arisen in each county. Therefore the plaintiffs had the right to elect in which they would bring their action, and, having chosen to bring it in Millard county, where a part of that which is essential to their right to recover took place, the venue was properly laid." See, also, *Lower Kings River Water Ditch Co. v. Kings River & Fresno Canal Co.*, 60 Cal. 408.

In *Miller & Lux v. Rickey*, 127 Fed. 573, the rule was stated as follows: "The general principle is that, where a wrong has been committed by some person, and another person has been injured thereby, the injured person has a lawful right to recover from the wrong-doer; the wrong and the injury are both necessary elements, and the absence of either one of them would be fatal to a suit. The two elements must therefore exist and unite in order to form a good cause of action. The direct purpose of all judicial acts is relief to a litigant, which cannot be given by a judgment or decree alone, but must be given, if at all, through the enforcement

of the one or the other by appropriate process; and it has often been said that the highest test of the jurisdiction of a court in a given case is found in the answer to an inquiry whether it has lawful power thus to enforce its judgment or decree. The general doctrine at common law is that actions for injury to real estate in the nature of a trespass or in case of nuisances—and other cases might be cited—is local, and must be brought in the county in which the land lies; but, where the act which caused the injury to the land was committed in another county or district, suit may be brought in either at the election of plaintiff." See, also, *Vermont Valley R. v. Connecticut River Power Co.*, 99 Vt. 397, 133 Atl. 367.

In *Willey v. Decker*, 11 Wyo. 496, 73 Pac. 210, the court made this pertinent statement: "It may be conceded, for the purposes of this decision, that the court would not assume jurisdiction unless it were found, in the class of cases referred to, that either the wrongful act or the injury occurred in this state."

And in *Lakeside Irrigation Co. v. Markham Irrigation Co.*, 116 Tex. 65, 285 S. W. 593, the court, largely on the authority of *Deseret Irrigation Co. v. McIntyre, supra,* said: "It seems clear to us that 'in cases of this kind where the wrongful act is begun in one county and consummated in another, the suit may be prescribed in either county at the election of the plaintiff.' "

Plaintiff's cause of action is based upon two essential elements—a wrong committed in Valley, Loup and Garfield counties, and a damage resulting in Platte county. The cause of action being founded on two essential elements done in different jurisdictions, both being material and traversable, and the one without the other not giving rise to an action, has a dual origin and the action may be brought in either jurisdiction. We think the rule announced in *State v. Cochran, supra,* is correct and we adhere to and reaffirm that decision.

We necessarily come to the conclusion that the action was properly brought in Platte county and that service of sum-

mons could be had upon the state officers, the cause of action having arisen there within the meaning of section 20-404, Comp. St. 1929.

Defendant district contends, however, that, except where the action pertains to realty, an action against a municipal corporation or political subdivision of the state is inherently local, and any action against such a public corporation must be brought in the county of its domicile, or where it is situated, without regard to where the cause of action arose. An irrigation district is a public corporation and not a municipal corporation, and is not confined to the strict and narrow limits of a municipal corporation. Where a court has jurisdiction of the subject-matter of an action, and obtains service of summons upon a defendant properly amenable to service in that county and having a substantial interest in the subject of the suit adverse to plaintiff, a summons may properly issue to a defendant public corporation domiciled in another county under the provisions of section 20-504, Comp. St. 1929. Consequently, the defendant district was properly served with summons in Valley county and jurisdiction thereby obtained over it in Platte county.

An appropriation of public waters for power purposes, together with the necessary dams, ditches and other works used therewith, are appurtenant to the power plant and the real estate upon which such plant was constructed. 2 Kinney, Irrigation and Water Rights (2d ed.) sec. 1013. And, consequently, any wrongful act which reduces the quantum of water necessary for plaintiff district's needs, within the limits of its appropriation, constitutes a damage to its appropriative and other property rights in Platte county.

It is alleged in plaintiff district's petition, and it must be accepted as true in determining the correctness of the court's ruling in sustaining the general demurrer to it, that plaintiff district's appropriation for power purposes was in the amount of 3,500 second-feet with a head of 118 feet and a priority date as of September 15, 1932. Defendant district has an appropriation for irrigation purposes in the amount of 238 second-feet with a priority date of March 28,

1933, with the quantum of annual delivery limited to one acre-foot for each acre of land to which water is usefully applied. The rate of diversion was restricted to one second-foot for each 150 acres of land actually irrigated. Plaintiff district's appropriation was further limited in that it must not be exercised so as to curtail diversion of water by the defendant district in the amount of one acre-foot for each acre of land actually irrigated, but not exceeding the maximum amount of 38,000 acre-feet annually. The petition alleges that only 18,000 acres of land were irrigated by defendant district and consequently its maximum annual diversion is only 18,000 acre-feet at a maximum diversion rate of 120 second-feet. Plaintiff district alleged that in 1940 defendant district diverted 69,342 acre-feet at a time when plaintiff district was in need of and unable to get the amount of its appropriation for power purposes.

It must be conceded that the limitations on plaintiff district's appropriative right restrict the plaintiff district only and does not amount to a grant to the defendant district. Defendant district must derive its rights from its grant and not from the limitations placed in plaintiff district's grant.

It is urged by defendant district that the one acre-foot of water for each acre actually irrigated to which its appropriation is limited is directory only. With this we cannot agree. The quasi judicial powers conferred upon the department of roads and irrigation have application only to the granting and cancelation of appropriation rights and priorities. *State v. Cochran, supra.* Under the provisions of section 81-6317, Comp. St. 1929, the department may approve the application for an appropriation of public waters in an amount less than that applied for. If the applicant be dissatisfied, the remedy is by appeal to the supreme court, and if he fails to appeal, the appropriation as made is final. The contention of defendant district that the restriction of its appropriation to one acre-foot of water to each acre of land actually irrigated is directory and invalid is without merit.

It is next urged that the diversions of water under defend-

ant district's appropriation are to be measured at the land and not at the point of diversion from the river. We think that an examination of the irrigation statutes of this state reveals a legislative intent that appropriated waters shall be measured at the point of diversion. See sections 81-6316 and 81-6326, Comp. St. 1929. For instance, section 81-6326 requires an appropriator to construct and maintain a head-gate at the point of diversion and to install at that place a device for measuring the water diverted. The correct rule was announced in *Stickney v. Hanrahan*, 7 Idaho, 424, 63 Pac. 189, wherein the court said: "Under the law, water of all claimants must be measured at the point where such water is diverted from the natural channel of the stream from which it is taken. This is a matter of necessity, demanded by public policy. It is the policy of the law to prevent the wasting of water." Any other rule would permit uncertainty and confusion to enter into the determination of appropriative rights. A satisfactory administration of the waters of the stream can be had only by computing the amounts to which an appropriator is entitled at the point of diversion. The quantum of water which the defendant district can divert from the river is that amount to which defendant district is entitled under its own appropriation, without reference to limitations contained in plaintiff district's appropriation, measured at the point of diversion at the river. It is true that defendant district's divertable amount may increase up to October 1, 1944, but not in any event exceeding 38,000 second-feet, dependent upon the number of additional acres of land in the district to which a usable quantity of water has been applied. The amount of water to which defendant district is entitled is therefore dependent upon the number of acres to which water has been beneficially applied at the time the determination is to be made.

Defendant district contends that as an irrigation district it has the right to take water in excess of its appropriation as against an appropriator for power purposes as long as it can be put to a beneficial use in the irrigation of farm lands.

This raises a point of first impression in this state.

The Constitution provides: "The necessity of water for domestic use and for irrigation purposes in the state of Nebraska is hereby declared to be a natural want." Const. art. XV, sec. 4.

Section 6, art. XV of the Constitution also provides: "The right to divert unappropriated waters of every natural stream for beneficial use shall never be denied except when such denial is demanded by the public interest. Priority of appropriation shall give the better right as between those using the water for the same purpose, but when the waters of any natural stream are not sufficient for the use of all those desiring to use the same, those using the water for domestic purposes shall have preference over those claiming it for any other purpose, and those using the water for agricultural purposes shall have the preference over those using the same for manufacturing purposes. Provided, no inferior right to the use of the waters of this state shall be acquired by a superior right without just compensation therefor to the inferior user."

It was clearly the intention of the framers of our Constitution to provide that water previously appropriated for power purposes may be taken and appropriated for irrigation use upon the payment of just compensation therefor. It never was the intention of the framers of the Constitution to provide that water appropriated for power purposes could thereafter arbitrarily be appropriated for irrigation without the payment of compensation. Historically the purpose for which an appropriation was obtained had no bearing upon its priority. Until the advent of constitutional provision and statutory law, priority of appropriation conferred superiority of right without regard to the character of the use. The maxim, "He who is first in time is first in right," thus became fundamental doctrine in determining the priorities of appropriators, irrespective of use. A right of appropriation, under our Constitution, whether for irrigation or for power purposes, is a property right which is entitled to the same protection as any other property right. The

right of property therein cannot be violated with impunity any more than that in any other type of property. This is so fundamental that citations of authority are unnecessary.

Section 6 of article XV of the Constitution, fixing a priority of uses for which public waters may be appropriated, is a self-executing provision and the courts, in the absence of a statutory method, would be obliged to provide the means for enforcing its provisions. To hold otherwise, and to permit junior appropriators of water for a superior use to divert it with impunity, would invite uncertainty and chaos into the irrigation laws of this state. For many years no legislative action was taken to provide a special method for effectuating the provisions of this section of the Constitution. In 1941, however, the legislature enacted chapter 138, Laws 1941, providing a special method for the condemnation of the rights of a senior appropriator having an appropriation of water for an inferior use. Defendant district argues that this law did not become operative until after the filing of plaintiff district's last amended petition. It is not necessary for us to determine the rights of the parties growing out of this situation. Either it affords a means for the condemnation of plaintiff district's power appropriation by a junior appropriator for irrigation purposes in the present case, or defendant district is relegated to the remedies existing prior to its enactment.

The fact that defendant district may desire the water lawfully appropriated to plaintiff district and to which it has a vested right is unimportant until plaintiff district's right thereto has been lawfully divested and compensation paid. Until plaintiff district's vested rights have been divested by due process of law, its appropriation must be considered as prior to that of the defendant district. Other jurisdictions have passed upon this and similar questions and they uniformly support this conclusion.

In *Montrose Canal Co. v. Loutsenhizer Ditch Co.*, 23 Colo. 233, 48 Pac. 532, the court in passing on a like question said:

"It is, however, insisted that the complaint is sufficient to entitle the consumers under the plaintiff ditch to fifty cubic

feet of water per second of time for domestic use, regardless of the priority of defendant ditch to the use of water for irrigation; that the use of water for domestic purposes is recognized by the Constitution as paramount to all other uses; and the mere averment that water is required for domestic purposes, and an attempt to deprive another of such use by diverting the water to any other purpose, is a sufficient statement of a cause of action.

"We think this claim is untenable. While it is true that section 6 of article 16 of the Constitution recognizes a preference in those using water for domestic purposes over those using it for any other purpose, it is not intended thereby to authorize a diversion of water for domestic use from the public streams of the state, by means of large canals, as attempted in this case. The use protected by the Constitution is such use as the riparian owner has at common law to take water for himself, his family or his stock, and the like. And if the term 'domestic use' is to be given a different or greater meaning than this, then as between such enlarged use and those having prior rights for agricultural and manufacturing purposes, it is subject to that other constitutional provision requiring just compensation to those whose rights are affected thereby. *Strickler v. Colorado Springs*, 16 Colo. 61; *Armstrong v. Larimer County Ditch Co.*, 1 Colo. App. 49.

"In the *Strickler* case, this court, in construing the constitutional provision referred to as applied to water rights antedating its adoption, said:

" 'Our conclusion, therefore, is that the constitutional provisions relied upon were not intended to affect, and do not affect, prior vested rights, but that all owners of such rights are entitled to compensation therefor before the same can be taken or injuriously affected.' " See, also, *Town of Sterling v. Pawnee Ditch Extension Co.*, 42 Colo. 421, 94 Pac. 339; *Nevius v. Smith*, 86 Colo. 178, 279 Pac. 44; *People v. Hinderlider*, 98 Colo. 505, 57 Pac. (2d) 894.

In *Montpelier Milling Co. v. City of Montpelier*, 19 Idaho, 212, 113 Pac. 741, it was urged by defendant that a constitutional provision similar to that in our Constitution made

an appropriation of water for domestic uses superior to an appropriation of water for manufacturing uses, without regard to priority, and that an appropriation for manufacturing purposes could be destroyed by a subsequent appropriation for domestic purposes. On this point the court said:

"We do not think that the language thus used in the Constitution was ever intended to have this effect, for it is clearly and explicitly provided in said section that the right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses shall never be denied; that priority of appropriation shall give the better right as between those using the water. This clearly declares that the appropriation of water to a beneficial use is a constitutional right, and that the first in time is the first in right, without reference to the use, but recognizes the right of appropriations for domestic purposes as superior to appropriations for other purposes, when the waters of any natural stream are not sufficient for the service of all those desiring the same. This section clearly recognizes that the right to use water for a beneficial purpose is a property right, subject to such provisions of law regulating the taking of private property for public and private use as referred to in section 14, art. 1 of the Constitution.

"It clearly was the intention of the framers of the Constitution to provide that water previously appropriated for manufacturing purposes may be taken and appropriated for domestic use, upon due and fair compensation therefor. It certainly could not have been the intention of the framers of the Constitution to provide that water appropriated for manufacturing purposes could thereafter arbitrarily and without compensation be appropriated for domestic purposes. This would manifestly be unjust, and clearly in contravention of the provisions of this section, which declare that the right to divert and appropriate the unappropriated waters of any natural stream for beneficial use shall never be denied, and that priority of appropriation shall give the better right." See, also, *Basinger v. Taylor*, 30 Idaho, 289, 164 Pac. 522.

We necessarily come to the conclusion that a senior appropriative right for power purposes may not be destroyed by a superior user except by the employment of formal condemnation proceedings and the tender of compensation prior to interference.

Assuming, as we must in this case, that the allegations of plaintiff district's petition are true, plaintiff district is entitled to have its appropriative rights protected against the wrongful diversions of the defendant district. The defendant state officers are duty bound to enforce all appropriations in accordance with their priorities as to time, unless such appropriations or priorities be divested in the manner provided by law. The petition states facts which, if established, call for the application of the rules of law herein discussed. In our opinion, it states a cause of action, and the trial court was in error in sustaining a general demurrer thereto.

REVERSED.

PAINE, J., dissents.